ISABEL TYRELL ET AL., Plaintiffs and Appellants, *v.* RAFAEL SAURÍ, Defendant and Appellee.

No. 10337.   Argued February 1, 1951.—Decided March 30, 1951.

---

*Carlos E. Colón* for appellants.  *Rafael Saurí pro se.*

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

In reversing the judgment entered by the lower court refusing jurisdiction in this case—*Tyrell* v. *Saurí*, 71 P.R.R. 429, we said at p. 440: "We have no desire to express an opinion as to whether the evidence in this case is sufficient to declare the defendant a spendthrift. That is the mission of the lower court at first instance. . . ."

On remand, the lower court proceeded to decide the case on the merits and on the grounds set forth in an extensive opinion containing findings of fact and conclusions of law, it again dismissed the complaint. Feeling aggrieved, the plaintiffs appealed and as an only error they contend that the trial court erred in weighing the evidence with "noticeable" passion, prejudice, and partiality.

This is not the case in which the court resolved the conflict in the evidence introduced by the parties, for only the plaintiffs offered evidence since the case was heard without the defendant having appeared, but rather a case decided on the basis of the insufficiency of plaintiff's evidence regarding the minimum requirements to establish prodigality. The court *a quo* correctly followed the pattern advanced by the Judgment of the Supreme Court of Spain of March 25, 1942, cited in *Tyrell* v. *Saurí, supra,* at pp. 435–436, to the effect that although an enlarged concept should be given to the term prodigality which admits the inclusion therein of a whole series of economic disorders and of the modes or types of dissipation, certain circumstances which mark its essential characteristics must always concur, namely:

". . . (*a*) a disorderly and loose conduct—not merely imprudent—in the management or use of his own patrimony, either due to a disorderly spirit or to disorderly habits; (*b*) *that such conduct be habitual, inasmuch as the more or less irregular or excessive acts, but isolated or purely circumstantial, can not be characterized as constituting the legal condition of prodigality;* (*c*) if the preservation of the patrimony is unreasonably jeopardized to the prejudice of those persons who have a right of action and are attached to the prodigal by very close family ties and to whom the latter is bound by moral and legal obligations." (Italics ours.)

The complaint herein was filed on March 10, 1949 and alleged, as acts of prodigality carried out by the defendant, the following:

". . . that due to his age and character, the defendant has been *recently and habitually* carrying out acts of prodigality with respect to third persons who are not his relatives, *making gratuitous gifts of considerable sums of money and other acts of prodigality, capriciously wasting his estate* to the prejudice of the plaintiffs as wife and daughter, respectively, and defendant's sole forced heirs." (Italics ours.)

After making an analysis of the evidence for the plaintiffs, the lower court arrived at the conclusion that the only actions of the defendant which, in a deficient manner and

by inference, might be considered proved were the following: that in March 1948 the defendant borrowed from the Banco Crédito y Ahorro Ponceño on three personal promissory notes that were marked as agricultural advances, the total sum of $7,172.50 which was paid to the bank on May 3, 1948 with part of a $50,000 mortgage with which he encumbered his residence, it having been proved that at the time, with the balance of said sum and the proceeds from a property of his which had been condemned, payments were made on other debts of the defendant amounting to some $200,000; that on March 3, 1948, María Luisa Antongiorgi purchased at a public auction a house and lot in Ponce for $2,700 which she paid in cash and that the defendant, who carried on an illicit love affair with her, had given her the money; that likewise, during the month of April 1948 the defendant bought in the store "El Cometa" some furniture for Mrs. Antongiorgi, valued at $600, and that the latter had ordered certain other pieces of furniture valued at $1,500 which were not delivered to her because the plaintiffs, upon receipt of the $600 bill, directed the store not to fill the order; that the plaintiff tried to prove that the defendant had ordered Dr. Munera to fix Mrs. Antongiorgi's and somebody else's teeth for $150, but neither was the doctor's bill presented nor was it proved that the defendant paid it on completion of the work. The court concluded, furthermore, that there was no satisfactory evidence as to the value of defendant's properties in order to determine whether the alleged gifts he had made could affect or not plaintiffs' hereditary rights— § 186 of the Civil Code, 1930 ed.—but taking into consideration the evidence as a whole, the court deemed that his estate is worth over $200,000 and might even be worth $500,000, the latter amount being the one mentioned, dubitatively, by plaintiff Isabel Saurí in her testimony. It did not consider acceptable the $75,000 value set upon the estate by Luis J. Nicole, a witness, the husband of plaintiff Isabel Saurí and administrator and attorney-in-fact of the defendant, inas-

much as if a single item—the residence—had been mortgaged for $50,000 it could not be logically assumed that that property and the remaining agricultural farms of the defendant were not worth over $200,000, when defendant's son-in-law himself testified that certain compromises had been entered into with the Bank as to defendant's debts which amounted to the latter sum.

By virtue of those facts the lower court considered that the requisites or patterns (a), (b), and (c) contemplated by the Judgment of the Supreme Court of Spain, *supra*, had not been established by the plaintiffs since it had not been shown: (1) that defendant's conduct had been disorderly and loose in the management or use of his patrimony; (2) that such conduct had been habitual, inasmuch as his acts in connection with María Luisa Antongiorgi, even accepting that all of them had been proved, were purely circumstantial and isolated, and rather irregular; and (3) that the prodigal acts alleged unreasonably jeopardized the preservation of his patrimony to the prejudice of the plaintiffs as defendant's heirs.

From a thorough examination of the evidence we conclude that the only error assigned by the appellants was not committed. Said evidence is insufficient to meet the test required to establish a case of prodigality.

■■ The appellants argue that Dr. Fernández Marina's testimony shows that the defendant suffers from a hypomaniac condition whose characteristic is that he is gradually losing the capacity to control his primitive impulses, especially in the sexual aspect, and that this disease would gradually render him incapable in the future in other aspects of his personality and that the defendant was wholly incompetent to properly manage his estate. Thus, in fact, testified the expert. However, the court was not bound by said testimony [1] to declare the defendant a spendthrift, if the rest of the evi-

---

[1] *People* v. *Dones*, 56 P.R.R. 201; *Candelario* v. *Pension Board*, 45 P.R.R. 417 and *León* v. *Industrial Commission*, 58 P.R.R. 905.

dence only tended to show isolated acts of the defendant, which were classified by the court *a quo* as paying too high a price for illicit caresses, since notwithstanding Dr. Fernández Marina's testimony, the appellants offered no direct and authentic evidence that the defendant, either before or after March and April 1948, had squandered his patrimony in such a way that his conduct may be considered habitual. Rather, his conduct was one of isolated, irregular, perhaps immoral acts, but purely circumstantial.

■ The judgment of the Supreme Court of Spain of June 19, 1915, 133 *Jurisprudencia Civil* 729,[2] in a case similar to the case at bar but quite stronger, because of the evidence therein, dismissed an appeal on cassation taken from a judgment which on its turn had dismissed an action for declaration of prodigality filed by a wife against her husband because the latter had been, for years, making valuable gifts to a paramour and two daughters had with the latter. It was said at p. 740:

"Whereas, as held by this Court, since the Civil Code does not define prodigality. we are bound to acknowledge that it admits it in the general and grammatical sense of the word, namely, of waste and consumption of the estate in vain and useless things, the sense of which coincides with the sense previously attributed thereto by the 5th Act, title 11, 5th *Partida;* and this having been established, in order that a person may deserve the characterization of spendthrift and deserve to be applied the limitations which in the exercise of his civil capacity are fixed by §§ 221 and following of the aforesaid Code, *due regard must be given as a characteristic essential note, not to the more or less morality or legality of his acts in regard to the administration and disposition of his properties* and to challenge which in each specific case the law provides adequate and efficacious action, but rather to that of having performed them arbitrarily and capriciously, with no other purpose or end that the irrational complacence which the dissipation and squandering of such properties might produce with the spirit of the

---

[2] The judgment of March 25, 1942, *supra,* referred to this Judgment which was cited by the lower court.

person performing them, despite the fact that they are intended for the satisfaction and .fulfilment of necessary human ends and that the property right thereon is based on such destination." (Italics ours.)

▆▆▆ Neither can we accept appellants' contention that the Judge of the lower court acted with "noticeable" passion, prejudice, and partiality in the weighing of the evidence. His repeated references in his findings as to the fact that the witnesses had consistently testified by virtue of leading questions and intimations of their attorney are amply established in the record. It is true that the case was heard in default, but it was not the mission of the court, as the appellants contend, to object to the questions asked by their attorney. The reference made toward the fact that there was no evidence to the effect that defendant's properties were worth $500,000, as it was erroneously alleged that the court *a quo* stated, is not by itself demonstrative of passion, prejudice, or partiality. Not giving credence to the valuation of $75,000 set upon the properties by Mr. Nicole, for the reasons it gave, the court was compelled to make inferences, pursuant to the evidence as a whole, regarding the value thereof. At any rate, that was a most essential fact which the appellants had the burden to prove for, according to the importance of a person's patrimony, it may or may not be considered that the gifts he makes and expenses he incurs affect the hereditary rights which the persons authorized by § 188 of the Civil Code, 1930 ed., to demand the decree of prodigality, may have in said patrimony.

▆▆▆ Just as it is a well-established doctrine in this jurisdiction that we must respect the findings of fact of lower courts, based on the evidence presented—Rule 52(a) of the Rules of Civil Procedure—the same doctrine prevails in Spain and especially in these actions for prodigality it has been decided that ". . . it may well be asserted that, for civil purposes today a spendthrift is the prodigal or squanderer who wastes away his estate in vain, useless, and superfluous

things which keep no proportion with whatever means he may have to satisfy the needs of his family, the dissipator or dilapidator of his estate, commonly called extravagant; *but as these concepts are subject to so many interpretations according to the circumstances of each case, due to the diversity of facts which usually concur and elements to form an opinion, and there is no positive law determining and fixing those which are sufficient to reach the restriction of the personality* by the declaration authorized by the aforesaid § 221 of the Civil Code, in order to decide the case it is imperative *to bear in mind the jurisprudence rules which empower instance courts to weigh the probatory elements supplied to them by the parties,* which must be accepted in cassation, *unless the evident mistakes or errors in which the decision appealed from might have incurred be shown in a clear and procedural manner."* (Italics ours.) Judgment of September 30, 1930, 196 *Jurisprudencia Civil,* 185, 194.

The judgment appealed from will be affirmed.